UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MANOJ PAPA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 1:23-cv-01221 |
| ) | |
| v. ) | |
| ) | Judge John Robert Blakey |
| EDWARD J. GREEN and ) | |
| COMMUNITY FIRST HEALTHCARE ) | |
| OF ILLINOIS, INC. d/b/a ) | |
| COMMUNITY FIRST MEDICAL ) | |
| CENTER, ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Manoj Papa claims that Defendants Edward Green and Community First Health Care of Illinois, Inc. d/b/a Community First Medical Center violated 42 U.S.C. § 1981 by allowing his supervisor Michael Cherny to racially harass him. Before the Court is the Defendants' Motion for Summary Judgment, [41]. For the reasons explained below, the Court grants the Motion.

**I.  Background**

    **A. Factual Summary**[1]

Plaintiff, who is of Indian descent, served as the Director of Materials for Defendant Community First Medical Center (the "Center") beginning in late July 2019. [43] ¶¶ 1, 6. Michael Cherny served as the Center's Chief Financial Officer

---

[1] The Court draws these facts from parties' Rule 56.1 Statement of Facts and responses [43], [48], [50] (including exhibits), where supported.

1

and, at least for a time, supervised Plaintiff. *Id.* ¶ 11. Plaintiff worked at the Center for approximately fifteen months. *Id.* ¶ 22.

Plaintiff's main interactions with Cherny occurred in daily finance meetings. *Id.* ¶ 14. In addition to Plaintiff and Cherny, several directors from other departments would attend these meetings. *Id.* On rare occasions, the two would have one-on-one meetings regarding the organization's finances. *Id.* ¶ 16.

Cherny used unprofessional and profane language, and he acted aggressively and short-temperedly in the workplace. *Id.* ¶ 17; [49] at 7. Cherny behaved this way around Plaintiff and other employees of varying races. [43] ¶ 18. Plaintiff claims Cherny began behaving this way around him early in his employment. *Id.* ¶ 21.

According to Plaintiff, Cherny also directed racial remarks at Plaintiff. Plaintiff estimates this occurred on approximately twenty-five to thirty occasions during his employment. *Id.* ¶ 22.[2] Cherny would pass Plaintiff in the hallway and greet him by saying statements such as "hey, you Hindu" or "hey, you Indian." *Id.* ¶ 25. Sometimes Plaintiff would walk in the halls with another co-worker, Faisal Master, who was of Pakistani descent. *Id.* When Cherny saw them together, he greeted both men based upon their ethnicities or assumed religions, such as saying "hey, you Pakastani" or "hey you, Muslim." *Id.* At least once, Cherny asked why they were walking together, referring to the historical conflict between Pakistan and

---

[2] Plaintiff claims that this number was just an estimate and does not represent a definitive recollection of the total amount of times the comments took place. As support for his estimate, Plaintiff cites to his deposition testimony where he claimed that, for the first three months of his employment, the comments occurred two or three times per week. [48] ¶ 22.

2

India. *Id.* ¶ 26.³ Due to these hallway interactions, Plaintiff tried to avoid crossing paths with Cherny. [47] at 3. Additionally, in one meeting where only the two were present, Cherny referred to Plaintiff as a "red dot" Indian. [43] ¶ 30. The above-cited incidents comprise the sum total of the alleged discrimination; Plaintiff identified no other harassment and no one else complained about any racial remarks allegedly made by Cherny about Plaintiff outside of Plaintiff's presence. *Id.* ¶ 30, 31, 32.

In addition to the Center, Plaintiff Papa sues Edward Green, the Center's corporate president and fifty percent owner. *Id.* ¶ 49. Green relied upon other corporate officers, including Cherny, to run the hospital. *Id.* ¶ 52. Plaintiff never informed Green personally of Cherny's harassment, and Plaintiff makes no assertion that Green condoned, approved of, or acquiesced in Cherny's comments. *Id.* ¶ 59, 61. Additionally, Green knew nothing of Cherny's alleged racial comments. *Id.* ¶¶ 55, 56, 58, 59, 60, 61.⁴

At all relevant times, the Center observed an Equal Employment Opportunity and Anti-Harassment and Anti-Discrimination Policy, which prohibited racial discrimination. *Id.* ¶ 36. The Policy included an investigations protocol to be followed when the Center received a complaint of racial harassment. *Id.* ¶ 37. Plaintiff claims he reported Cherny's hallway comments to Gabriella Diaz, employed in Human Resources, in late 2019, which should have sufficed to trigger the Center's

---

³ The record contains little to no evidence to corroborate Papa's recollection of events, and Master had no recollection of these events. *See* [43-7] ¶¶ 5–6.
⁴ Plaintiff disagrees with this fact, but he fails to properly contest it in the record. *See* [48] ¶¶ 60, 62 (confirming Defendants' allegation that the only thing reported to Green was that Cherny used "foul language."). Consistent with Fed. R. Civ. P. 56(e)(2), the Court thus accepts this fact for the purposes of the motion.

investigations protocol. *See id.* ¶ 39. But Diaz denies Plaintiff ever filed a report, and the Center has no record of any complaint. *Id.* ¶¶ 41, 44.

Papa left the Center on October 9, 2020, when the company eliminated his position in a reduction in force. *Id.* ¶¶ 46, 47. Three people, including Cherny, participated in the decision to eliminate Papa's position. *Id.*

### B. Procedural History

Plaintiff sued the Center and Green on February 27, 2023, [1], and he filed an amended complaint on June 26, 2023. [20]. Defendants jointly moved for summary judgment. [41]. Defendants argue that Plaintiff failed to establish a prima facie case for § 1981 discrimination because the harassment was not objectively hostile, severe, or pervasive. [42] at 8–12. Separately, they also deny that either Defendant is liable. *Id.* at 6–8, 12–14. They also ask the Court to disregard comments Cherny allegedly made about Plaintiff's religion because § 1981 addresses only racial, not religious, harassment. *Id.* at 14–15.

Plaintiff claims the Center remains liable for Cherny's behavior and believes a genuine issue of fact remains as to whether Defendant Green acquiesced as to Cherny's harassment. [47] at 2–6. He believes there is ample basis for the Center's liability. [47] at 6–8. Regarding the religious comments made, Papa acknowledges that § 1981 claims pertain solely to race, but he maintains that these comments give the Court a fuller picture of Cherny's conduct toward Papa. *Id.* at 8.

4

## II. Legal Standard

Summary judgment remains proper when no genuine disputes as to material facts exist and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the burden of showing no genuine dispute of material fact exists. *Reverse Mortg. Sols., Inc. v. Am. Portfolio Mortg. Corp.*, 2023 WL 6198822, at *2 (N.D. Ill. Sep. 22, 2023). When evaluating a motion for summary judgment, the Court evaluates the evidence in the light most favorable to the non-moving party, *Nicholson v. City of Peoria*, 860 F.3d 520, 522 (7th Cir. 2017); it "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts" but asks whether a material dispute of fact exists that requires a trial in which a reasonable jury could possibly return a verdict for the non-moving party. *Johnson v. Advoc. Health and Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (quoting *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003)).

In response to the motion, the non-moving party must identify specific evidence that shows a genuine dispute. *Id.* at 894 (citing *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017)). Inferences based upon speculation or conjecture remain inadequate, *id.* (citing *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 721–22 (7th Cir. 2018)); nor will a "mere scintilla of evidence" suffice, *id.* (citing *Grant*, 870 F.3d at 571).

**III. Analysis**

Papa claims racial discrimination under § 1981.[5] To survive a motion for summary judgment on a § 1981 hostile work environment claim, Plaintiff must show: (1) the work environment was both objectively and subjectively offensive; (2) race was the cause of his harassment; (3) the conduct was severe or pervasive; and (4) the employer legally may be held liable. *Clacks v. Kwik Trip, Inc.*, 108 F.4th 950, 957 (7th Cir. 2024) (citing *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 544 (7th Cir. 2011)).[6] As discussed below, even viewing the evidence in the light most favorable to Plaintiff, there remains insufficient evidence for a reasonable jury to hold Defendants liable under § 1981.

To establish a hostile work environment, Plaintiff first must prove offensiveness. Offensiveness includes both the plaintiff's subjective view of the workplace and a reasonable person's perspective of the environment. A plaintiff's perception of the workplace as hostile is all that is required for the subjective element. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)). When determining objective offensiveness, however, the Court considers the frequency of the conduct, its

---

[5] In passing, Plaintiff mentions *McDonnell Douglas*, [47] at 2, but does not develop any arguments using the burden-shifting framework. *See* McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Regardless, the Court considers the evidence presented as a whole to determine if a reasonable factfinder could find the defendants liable. Li v. Fresenius Kabi USA, LLC, 110 F.4th 988, 994 (7th Cir. 2024); *see* Ortiz v. Werner Enters., 834 F.3d 760, 765–66 (7th Cir. 2016) (rejecting the "convincing mosaic" standard and reiterating that evidence should be evaluated holistically).

[6] Courts analyze § 1981 and Title VII the same manner. Yancick v. Hanna Steel Corp., 653 F.3d 532, 544 (7th Cir. 2011). So, the Court cites to both § 1981 and Title VII cases. Similarly, hostile work environment claims based upon racial harassment and sexual harassment are analyzed using the same standard. Paschall v. Tube Processing Corp., 28 F.4th 805, 813 (7th Cir. 2022) (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116 n.10 (2002)). So, the Court cites sexual harassment cases as well.

severity, whether it was physically threatening or humiliating or merely offensive, and whether it interfered with the employee's performance. *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 463 (7th Cir. 2002) (citing *Faragher*, 524 U.S. at 787–88).

Next, a plaintiff must show that race was the cause of his discrimination. To be clear, a § 1981 hostile work environment claim need not show that the harassment is explicitly racial, but it "must show it had a racial character or purpose." *Yancick*, 653 F.3d at 544. And, fundamentally, discrimination requires a person with a particular trait to be mistreated in a way that is uniquely shared by people with that same trait. *See Holman v. Indiana*, 211 F.3d 399, 403 (7th Cir. 2000).

The third element of the test involves the requisite pervasiveness and severity of the complained-of conduct, and essentially, the same factors used to evaluate objective hostility are analyzed here. *See Lambert v. Peri Formworks Sys., Inc.*, 723 F.3d 863, 868 (7th Cir. 2013) (citing *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 552 (7th Cir. 2002)). Ultimately, for misconduct to be actionable, it must be so pervasive or severe that it "alter[s] the conditions of employment and create[s] an abusive working environment." *McPherson v. City of Waukegan*, 379 F.3d 430, 438 (7th Cir. 2004) (quoting *Hilt-Dyson*, 282 F.3d at 462–63).

### A. Hostile Work Environment

Here, Plaintiff's statements that he felt stressed and belittled and uncomfortable in his work environment satisfy the element of subjective offensiveness. *See* [43-1] 113:4–12. But Cherny's conduct falls short of satisfying the

objective element; the record evidence does not describe an objectively hostile work environment under the law.

The record shows that, over the course of fifteen months, Cherny greeted Papa approximately thirty times in an off-color manner that implicated Papa's ethnicity. But even by Papa's own account, most of the comments were not made in front of others; none were aggressive or threatening; and the majority were not even derogatory. Section 1981 does not prohibit all verbal or physical harassment in the workplace, *Hilt-Dyson*, 282 F.3d at 463, and no reasonable person would consider Cherny's occasional, crass comments to be legally intolerable under controlling precedent.

Moreover, the record also shows that Cherney behaved offensively and belligerently toward employees irrespective of race, and to win on his claim, Plaintiff would have to show that Cherny harassed him *because of* his race. *See Yancick*, 653 F.3d at 546 ("section 1981 does not cover the 'equal opportunity' harasser") (citing *Holman*, 211 F.3d at 403). The record, however, fails to show that Cherny's conduct toward Papa had anything to do with racial animus. Therefore, no reasonable jury could find that Cherny "harassed" Plaintiff because of his race.

Plaintiff also argues that Cherny was instrumental in his firing and claims his termination constitutes evidence of racial harassment. But the record contains no evidence to support this theory; Papa does not claim, for example, that Cherny got him fired for complaining about Cherny's harassment, *see Smith v. Bray*, 681 F.3d 888, 895–96 (7th Cir. 2012); nor does he claim that his firing had anything to do with

8

his race. Speculation alone cannot create a dispute of material fact. *See Beverly v. Abbott Lab'ys*, 107 F.4th 737, 747 (7th Cir. 2024) ("Speculation about colleagues' ill motives is too conclusory to create an issue of material fact.") (citing *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000)); *Circle City Broad. I, LLC v. AT&T Servs., Inc.*, 99 F.4th 378, 384 (7th Cir. 2024).

In sum, even when considering Plaintiff's evidence as a whole, no reasonable jury could find that the environment was objectively hostile. The racial harassment Papa faced was not severe, let alone severe enough to have altered the conditions of his employment under the law. Further, the complaints of Cherny's abusive speech cannot be attributed to Papa's race because Cherny behaved this way toward other employees regardless of race. Considering the overall context and the totality of the circumstances, the record precludes any finding that Plaintiff's workplace remained objectively hostile. *See Faragher*, 524 U.S. at 787.

Nor were Cherny's harassing comments otherwise so pervasive or severe as to be actionable. To be sure, there is no strict formula for determining when harassment becomes actionable, and no specific number of offensive comments needed to automatically trigger liability. *Paschall v. Tube Processing Corp.*, 28 F.4th 805, 815 (7th Cir. 2022) (citing *Cerros v. Steel Techs., Inc.*, 288 F.3d 1040, 1047 (7th Cir. 2002)). Even one act or statement may suffice if it is sufficiently egregious. *Yancick*, 653 F.3d at 547; *see, e.g., Paschall*, 28 F.4th at 815. Here, however, given the nature and relative infrequency of Cherny's statements, a reasonable jury could not find that the harassment was severe or pervasive. For example, the record confirms that,

9

despite Cherny rude remarks, Plaintiff remained able to work normally. He never feared for his safety and never felt threatened; he simply tried to avoid crossing Cherny's path in the hallway. More is required to show a hostile work environment. *Yancick*, 653 F.3d at 544 ("We will not find a hostile work environment for mere offensive conduct that is isolated, does not interfere with the plaintiff's work performance, and is not physically threatening or humiliating."); *Faragher*, 524 U.S. at 788 ("These standards for judging hostility are sufficiently demanding to ensure that [§ 1981] does not become a 'general civility code.'"). The evidence falls far short of demonstrating pervasive or severe harassment, and no reasonable jury could find Defendants liable under § 1981.

### B. Employer Liability

Although no reasonable jury could find for Plaintiff on his § 1981 claim, the Court will nonetheless address the issue of employer liability.

As Plaintiff's supervisor, the Center would be strictly liable for Cherny's discriminatory conduct if the harassment resulted in a tangible employment action; however, it would be able to assert an affirmative defense if Cherny's harassment did not culminate in a tangible employment action. *Vance v. Ball State University*, 570 U.S. 421, 429 (2013). Termination is a tangible employment action. *Trahanas v. Northwestern Univ.*, 64 F.4th 842, 853 (7th Cir. 2023). Strict liability, however, does not attach simply because an employment action occurs, but rather that action must constitute a culmination of harassment. *Vance*, 570 U.S. at 423. As explained above, nothing—other than speculation—connects Cherny's harassment or Papa's race to

his ultimate termination. In short, the record provides no basis to hold Defendants liable under § 1981.

Defendant Green, as a corporate officer of the Center, may potentially be liable for Cherny's harassment. A corporate officer can only be personally liable under § 1981 if he participated in, directed, consented to, or acquiesced to the discriminatory behavior. *See Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 753–55 (7th Cir. 1985). And here, the record contains no evidence to suggest that this was the case. Although Green knew Cherny used "foul language," he had no idea Cherny commented upon employees' ethnicity and no idea Plaintiff subjectively felt discriminated against. Therefore, even if Plaintiff could get to a jury on his § 1981 claim, he has no legal basis to hold Green personally liable.

## IV. Conclusion

For the reasons explained above, the Court finds that no reasonable jury could find Defendants liable under 42 U.S.C. § 1981. As a result, the Court grants Defendants' motion for summary judgment [41] and directs the Clerk to enter judgment in Defendants' favor. Civil case terminated.

Date: February 18, 2026              Entered:

_____
John Robert Blakey
United States District Judge